UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **KENNETH JEFFERY SMITH** | **CIVIL ACTION NO. 23-0198** |
| | **SECTION P** |
| VS. | |
| | **JUDGE TERRY A. DOUGHTY** |
| **CALDWELL PARISH DETENTION CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Kenneth Jeffery Smith, a prisoner at Bossier Medium Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately February 14, 2023, under 42 U.S.C. § 1983. He names the following defendants: Caldwell Parish Detention Center ("CPDC"), Sergeant Hollowell, Sergeant Smith, Sergeant Wyles, Warden Kevin Wise, Deputy Warden Callendar, Lieutenant Davis, and unidentified officers.[1]

For reasons that follow, the Court should retain the following claims: (1) that Officer Smith utilized excessive force, spraying Plaintiff with mace twice; (2) that Defendants Hollowell, Smith, and/or Wyles used excessive force, slamming Plaintiff to the ground; (3) that Sergeant Hollowell used excessive force, shoving Plaintiff's head into concrete; (4) that Hollowell, Smith, and Wyles beat Plaintiff while his hands were behind his back; and (5) that Lieutenant Davis, Officer Smith, Officer Wyles, Sergeant Hollowell, and unidentified officers failed to provide medical treatment for injuries Plaintiff suffered after being slammed on the ground and beaten. The Court should dismiss Plaintiff's remaining claims, including his claims

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

against Caldwell Parish Detention Center, Warden Wise, and Deputy Warden Callendar.

## Background

Plaintiff states that on April 10, 2022, at CPDC, Sergeant Hollowell told him to give her "the grill" he had in his mouth. [doc. # 9, p. 1]. Plaintiff responded that Warden Callendar allowed him to have the grill. *Id.* Plaintiff claims that Hollowell then threw him on the ground. *Id.* He gave her the grill, but he claims that she grabbed the back of his "neck area" and pushed him back into Dorm G.[2, 3] *Id.*

Around 12 a.m.-2 p.m. the same day, Officers Smith and Wyles entered Dorm G and informed Plaintiff that he was "going to lock down." *Id.* Plaintiff asked the officers what he did wrong. *Id.* "One officer pulled a taser and the other one pulled out mace." *Id.* They told him that he "was talking with [his] hands, so [he] put them behind [his] back and kept them there." *Id.* Plaintiff asked the officers what rule he broke. *Id.* They told him to be quiet and walk. *Id.* He claims that when he asked again, Officer Smith sprayed him with mace even though his hands were behind his back and he never moved them. *Id.* The mace burned like fire. *Id.*

They all kept walking and arrived at "the entrance of the north side[,]" where they waited for the door to open. *Id.* at 1-2. While waiting, Plaintiff heard Sergeant Hollowell arrive, yelling. *Id.* at 2. When she "got close," someone shoved him into a brick wall. [doc. #s 9, p. 2; 11, p. 1]. He claims that he was then "lifted in the air" and "slammed on the left side of [his]

---

[2] Appearing to provide only background, Plaintiff does not claim that Hollowell's uses of force (i.e., throwing him on the ground, grabbing his neck, and pushing him back into a dormitory) were excessive. The undersigned instructed Plaintiff to amend and "specify all the actions he is claiming were excessive force[.]" [doc. # 10, p. 1]. Plaintiff filed an amended pleading, but he did not claim that Hollowell's actions above constituted excessive force. [doc. # 11].

[3] Plaintiff first refers to the dormitory as "Dorm 6" or "6 Dorm," but he later clarifies that it is "Dorm G." [doc. # 9, p. 5].

2

head and body," causing his head to bleed and his left elbow to fracture. [doc. # 9, p. 2]. He does not know which officer slammed him because his "back was turned[.]" [doc. # 11, p. 1]. He adds, "My hands never left from behind my back." [doc. # 9, p. 2]. He "was not a threat, and [he] was not aggressive to any of the officers." *Id.* at 3.

Plaintiff claims that Sergeant Hollowell then put her knee on his upper body and forcefully shoved his head into the concrete. [doc. # 11, p. 1]. He claims that "they" then hit him repeatedly while his hands were behind his back. [doc. #s 9, p. 2; 11, p. 2]. He does not definitively state which officer—Hollowell, Smith, Wyles, or all—beat him. He "suffered a broken tooth and left elbow." [doc. # 1, p. 2]. After he was handcuffed, "the officers shoved [his] arms up behind [his] back roughly . . . ."[4] [doc. # 9, p. 2].

Plaintiff was "escorted to the lockdown restroom on the north side of the facility." [doc. # 9, p. 2]. He "stated loudly that [he] needed medical attention, because [his] head was bleeding" and he thought his arm was broken because it hurt so bad. *Id.* Sergeant Hollowell removed the handcuffs and instructed Plaintiff to turn around. *Id.* Plaintiff complied and reiterated that he needed medical attention. He claims that Officer Smith then sprayed him with mace again. *Id.* He dropped to the floor because he was unable to breathe. *Id.* "They" told him to "get up and strip to be searched." *Id.* Plaintiff "did [his] best to strip with a fractured bone and blind, due to the mace. [sic]."[5] *Id.* Lieutenant Davis then shoved him "in a cold shower

---

[4] Plaintiff does not claim that the officers used excessive force when they shoved his arms "up" behind his back roughly. As above, the undersigned instructed Plaintiff to amend and "specify all the actions he is claiming were excessive force[.]" [doc. # 10, p. 1]. Plaintiff filed an amended pleading, but he did not claim that the officers' actions above constituted excessive force. [doc. # 11].

[5] Plaintiff again appears to provide only background/narrative. He does not claim that any defendant conducted an unlawful strip search. He does not, in other words, seek relief for these actions.

3

without any shower shoes to prevent foot fungus from the shower floor."[6]  *Id.*  He was allowed to shower for two minutes.  [doc. # 11, p. 2].

Plaintiff exited the shower and requested medical attention again, stating that his arm was injured.  *Id.*  He requested medical care for his bleeding head and injured arm from Lieutenant Davis, Officer Smith, Officer Wyles, Sergeant Hollowell, and unidentified officers.  [doc. #s 9, p. 4; 11, p. 2].  Lieutenant Davis "spoke for them and stated that [Plaintiff] was fine."  [doc. # 9, p. 4].  Plaintiff told Lieutenant Davis that his arm hurt "really bad" and that he needed medical care because his head was bleeding, he could barely walk, his head was swollen, and he could not move his arm.  *Id.*  He "repeated to all officers over and over" that he required medical attention, but they ignored him.  *Id.*

Sergeant Hollowell and another officer "roughly placed [Plaintiff] in lockdown cell 3 with a fractured elbow bone and [his] head bleeding . . . ."[7]  *Id.* at 2.  Plaintiff's "skin was peeling from the mace."  *Id.*  Another inmate "poured water from the sink in the lockdown cell over [Plaintiff's] head for at least ten minutes straight."  *Id.* at 3.  Aside from the two-minute shower, Plaintiff did not receive any "medical attention" after being sprayed with mace.  [doc. # 11, p. 2].

Plaintiff remained "in the lockdown cell, injured, until the next morning of April 11, 2022."  [doc. # 9, p. 3].  He requested medical care, and a nurse "instantly" sent him to a hospital, where he received an x-ray, a cast and sling for his arm, and pain medication.  *Id.* at 3-4.

---

[6] Plaintiff does not claim that Lieutenant Davis's shove was excessive force.

[7] Plaintiff does not claim that Hollowell and the unidentified officer's action of roughly placing him in a cell was excessive force.

Plaintiff was transferred to another facility on April 11, 2023. [doc. # 9, p. 3].

Plaintiff states that he struggles to eat due to his fractured elbow in his dominant left arm. [doc. # 9, p. 3]. He also suffered headaches, sleep problems, and trauma. *Id.*

Plaintiff seeks $150,000.000 for the uses of excessive force and his injuries, pain, and suffering. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[8] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

---

[8] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Excessive Force**

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (*citing Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "Force beyond that reasonably required to maintain or restore discipline is 'wanton and unnecessary.'" *Perez v. Collier*, 2021 WL 4095263, at *2 (5th Cir. Sept. 8, 2021) (*quoting Hudson*, 503 U.S. at 7). "This standard looks to an official's subjective intent to punish." *Id.*

However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment does not protect against "*de minimis*" use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind." *Id*. (citation and internal quotation marks omitted). Courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the

relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

    A. <u>Sprayed with Mace by Officer Smith (1)</u>

As above, Plaintiff claims that Officers Smith and Wyles informed him that he was "going to lock down." [doc. # 9, p. 1]. Plaintiff asked the officers what he did wrong. *Id.* "One officer pulled a taser and the other one pulled out mace." *Id.* They told him that he "was talking with [his] hands, so [Plaintiff] put them behind [his] back and kept them there." *Id.* Plaintiff asked the officers what rule he broke. *Id.* They told him to be quiet and walk. *Id.* He claims that when he asked again, Officer Smith sprayed him with mace even though his hands were behind his back and he never moved them. *Id.* He could not see out of one eye, and the mace burned "as if [he] was on fire." [doc. # 9, pp. 1-2].

Plaintiff does suggest that he defied orders to remain quiet. However, he also states that he was not a threat to anyone, suggests that Smith used little effort to temper the severity of a forceful response, and indicates that he suffered a greater-than-de minimis injury. Construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, the Court should retain this claim.

    B. <u>Slammed to the Ground</u>

Plaintiff states that while waiting for a door to open at "the entrance of the north side[,]" he heard Sergeant Hollowell arrive, yelling. [doc. # 9, p. 2]. When she "got close," someone shoved him into a brick wall. [doc. #s 9, p. 2; 11, p. 1]. He claims that he was then "lifted in the air" and "slammed on the left side of [his] head and body," causing his head to bleed and his left elbow to fracture. [doc. # 9, p. 2]. He adds, "My hands never left from behind my back." [doc.

8

# 9, p. 2]. He "was not a threat, and [he] was not aggressive to any of the officers." *Id.* at 3. He does not know which officer(s) slammed him because his "back was turned" and he had mace in one eye. [doc. #s 9; 11, p. 1].

The Court should retain this claim against Defendants Hollowell, Smith, and Wyles. [9]

C. Shoved Plaintiff's Head into Concrete

Plaintiff claims that Sergeant Hollowell put her knee on his upper body and forcefully shoved his head into the concrete. [doc. # 11, p. 1]. The Court should retain this claim.

D. Beat While Hands Behind Back

Plaintiff claims that "they" hit him repeatedly while his hands were behind his back. [doc. #s 9, p. 2; 11, p. 2]. He does not definitively state which officer—Hollowell, Smith, Wyles, or all—beat him. The Court should retain this claim against Hollowell, Smith, and Wyles.[10]

E. Sprayed with Mace by Officer Smith (2)

Plaintiff was "escorted to the lockdown restroom on the north side of the facility." [doc. # 9, p. 2]. He "stated loudly that [he] needed medical attention, because [his] head was

---

[9] *See generally Morris v. Pierce*, 2008 WL 4287967, at *5 (W.D. La. Sept. 17, 2008) ("Courts have denied summary judgment for officers or upheld jury verdicts against officers in similar settings where there was evidence of the use of excessive force by one or more of a group of officers, even though the plaintiff could not identify the specific officer(s) who actually employed the force."); *Khan v. Lee*, 2010 WL 11509283, at *2 (E.D. La. Dec. 2, 2010), *aff'd sub nom. Khan v. Normand*, 683 F.3d 192 (5th Cir. 2012) ("[O]fficers are not perforce entitled to qualified immunity simply because the plaintiff cannot identify the specific officers who actually employed the injurious force."); *Darden v. City of Berkeley*, 12 F.3d 1105 (9th Cir. 1993), aff'd sub nom. *Darden v. Berkeley City*, 139 F.3d 904 (9th Cir. 1998) ("Darden's inability to specifically identify the officers would not preclude liability if he presents evidence placing them at the scene of the alleged beating.").

[10] *See Greene v. DeMoss*, 2022 WL 3716201, at *3 (5th Cir. Aug. 29, 2022) ("[I]dentical, individual allegations are [not] inherently improper. To the contrary, identical allegations do not necessarily defeat an otherwise sufficient pleading. As the Ninth Circuit recently held, a 'good claim against one defendant d[oes] not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts.'").

bleeding" and he thought his arm was broken because it hurt so bad. *Id.* Sergeant Hollowell removed the handcuffs and instructed Plaintiff to turn around. *Id.* Plaintiff complied and reiterated that he needed medical attention. He claims that Officer Smith then sprayed him with mace again. *Id.* He dropped to the floor because he was unable to breathe. *Id.*

The Court should retain this claim against Officer Smith.

### 3. Medical Care

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm.

In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

    A. <u>Medical Care for Impact Injuries</u>

Plaintiff claims that Lieutenant Davis, Officer Smith, Officer Wyles, Sergeant Hollowell, and unidentified officers ignored him and failed to provide medical treatment after he repeatedly and loudly asked them for care for his bleeding and swollen head, his severe pain from a (potentially at the time) fractured bone in his arm, his inability to move his arm, and his inability to walk. Plaintiff remained "in the lockdown cell, injured, until the next morning of April 11, 2022." [doc. # 9, p. 3]. He requested medical care, and a nurse "instantly" sent him to a hospital, where he received an x-ray, a cast and sling for his arm, and pain medication. *Id.* at 3-4. He now struggles to eat due to his fractured elbow in his dominant left arm. [doc. # 9, p. 3]. He also suffered headaches, sleep problems, and trauma. *Id.*

Plaintiff states a claim on which relief may be granted, plausibly alleging that he had serious medical needs and that Lieutenant Davis, Officer Smith, Officer Wyles, Sergeant Hollowell, and the unidentified officers were deliberately indifferent to a substantial risk of serious harm.

Plaintiff did receive medical care for his injuries approximately one day after he suffered the injuries. As above, a delay in treatment is not unconstitutional unless there has been deliberate indifference that results in substantial harm. Construing Plaintiff's allegations

11

liberally and in his favor, he plausibly describes substantial harm from the approximate one-day delay in medical treatment. He was slammed on the ground, beaten, and shoved head-first into concrete, suffering a head injury—which caused bleeding, swelling, and an inability to walk—an arm injury resulting in an inability to move the arm, and a broken tooth. Most importantly, he endured severe pain from these injuries.

While the delay in medical treatment was only approximately one day, Plaintiff suffered severe pain from severe injuries during the delay. "[S]evere pain caused by the refusal to immediately treat pain can support a claim of deliberate indifference grounded in delayed treatment." *Williams v. Certain Individual Emps. of Texas Dep't of Crim. Just.-Institutional Div. at Jester III Unit, Richmond, Texas*, 480 F. App'x 251, 257 (5th Cir. 2010) (finding substantial harm where "there was a delay of almost 16 hours in receiving pain medications" for pain an inmate experienced following a leg amputation) (citing *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001) ("We have held that the substantial harm requirement may be satisfied by . . . considerable pain."); *see Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (finding substantial harm where the plaintiff endured *severe chest pains* during a four-hour delay in medical care); *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (suggesting that severe, excruciating pain from a fractured ankle combined with a two-to-three-day delay in treatment could constitute substantial harm).

The Court should retain this claim against Lieutenant Davis, Officer Smith, Officer Wyles, Sergeant Hollowell, and the unidentified officers.

B. Medical Care for Mace Injuries

Plaintiff claims that he did not receive medical care for the injuries or symptoms he endured because Officer Smith sprayed him with mace. Plaintiff, however, does not allege that

he ever requested care for these injuries from any defendant or otherwise informed any defendant of his injuries or symptoms. Rather, he states only that he requested medical attention for the impact injuries to his head and arm. [doc. # 9, p. 2]. Thus, he does not plausibly allege that any defendant *knew* he was exposed to a substantial risk of serious harm from the mace.[11]

Even assuming defendants did know of a substantial risk of serious harm to Plaintiff's health from the effects of the mace, Plaintiff does not plausibly allege that defendants were deliberately indifferent to that risk. Defendants allowed Plaintiff to shower for two minutes, and they placed him in a cell with running water and with another inmate, who poured water from the sink over Plaintiff's head for at least ten minutes. The Fifth Circuit has stated that pepper-spray "'[d]econtamination consists primarily of flushing the eyes with water.'" *Hoke v. Anderson*, 799 F. App'x 224, 226 (5th Cir. 2020) (*quoting Wagner v. Bay City*, 227 F.3d 316, 319 n.1 (5th Cir. 2000)); *see Amos v. Jefferson*, 861 F. App'x 596, 602 (5th Cir. 2021) (noting that a nurse explained to a prisoner that the proper method to decontaminate after being sprayed with a chemical agent is to use running water, which was available in the prisoner's cell).[12]

---

[11] *See Rombach v. Culpepper*, 2021 WL 2944809, at *5 (5th Cir. July 13, 2021) (finding that no defendant knew that the plaintiff was exposed to a substantial risk of serious harm where the plaintiff only told the defendants that he "did not feel well and [that] he wanted to go to the hospital."); *Moler v. Wells*, 18 F.4th 162, 168 (5th Cir. 2021) (finding that an officer did not know that the plaintiff was exposed to a substantial risk of serious harm because the plaintiff did not know the extent of his injury at the time and only told the officer that he felt minor pain in his arm).

[12] *See also Martin v. Seal*, 510 F. App'x 309, 315-16 (5th Cir. 2013) ("[A]fter each round of chemical treatment, they examined Martin, determined that he was not injured, and offered him a shower. Such actions counter Martin's allegations of deliberate indifference."); *King v. City of Bossier City*, 2007 WL 1791215, at *4 (W.D. La. June 19, 2007) ("[T]o the extent plaintiff claims that he was provided inadequate medical care following the alleged multiple bursts of pepper spray . . . plaintiff was allowed to rinse out his eyes which shows that defendants were not deliberately indifferent . . . ."); *Ward v. Shaw*, 2015 WL 5712812, at *3 (S.D. Miss. Sept. 29, 2015) (finding no deliberate indifference where an inmate was allowed to shower twice after the administration of pepper spray, reasoning, "although his treatment may not have been the best

Ultimately, defendants' actions (or inaction) do not reflect the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference." *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014). The Court should dismiss these claims.

**4. Entity Unamenable to Suit**

Plaintiff names CPDC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." L‌A. C‌IV. C‌ODE art. 24.

CPDC does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against CPDC.

**5. Warden Kevin Wise and Deputy Warden Callendar**

Plaintiff names Warden Wise and Deputy Warden Callendar as defendants "because they run the jail[,]" but "they were not involved in the incident . . . ." [doc. # 9, p. 3].

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim.*

---

that money can buy, this course of treatment did not demonstrate deliberate indifference to his medical needs."); *Hamilton v. Orr*, 2023 WL 2878820, at *4 (M.D. La. Mar. 22, 2023), *report and recommendation adopted,* 2023 WL 2868008 (M.D. La. Apr. 10, 2023) (finding that a nine-hour delay between when a prisoner was sprayed with a chemical agent and when he was allowed to shower did not state a claim of constitutional dimension).

14

*Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not allege that Wise or Callendar affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between their conduct and any alleged constitutional violation.[13] Instead, Plaintiff pleads only vicarious liability, essentially naming these individuals as defendants solely because of the positions or titles they hold. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

In addition, Plaintiff does not allege that these defendants implemented an unconstitutional policy, practice, custom, or procedure that deprived him of any constitutional right.[14]

Accordingly, the Court should dismiss Plaintiff's claims against Wise and Callendar

---

[13] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

[14] *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (opining, where a plaintiff "named the supervisory officials as defendants and alleged generally that they failed in their responsibilities as department heads[,]" that the plaintiff "failed to allege any particular defendant's personal involvement in conduct that caused constitutional deprivation" and failed to allege "that any of the defendants implemented an unconstitutional policy causally related to his injury."); *Taylor v. LeBlanc,* 851 F. App'x 502 (5th Cir. 2021).

**6. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[15] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

Here, Plaintiff states that Lieutenant Davis shoved him "in a cold shower without any shower shoes to prevent foot fungus from the shower floor." [doc. # 9, p. 2]. Plaintiff showered for two minutes. [doc. # 11, p. 2].

Plaintiff does not appear to seek relief for Davis's action (or inaction). He seeks monetary compensation only for "excessive force and for pain and suffering and other obstacles

---

[15] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

16

[he] faced due to injuries." [doc. # 1, p. 4]. He does not allege that he suffered any injury because he lacked shower shoes.

Even assuming Plaintiff did seek relief for Davis's action/inaction, he does not plausibly allege that lacking shower shoes for two minutes on one occasion constituted an extreme deprivation of an identifiable life need or amounted to a substantial risk of serious harm. Rather, Plaintiff at best describes a speculative, brief risk of harm. *See Clarke v. Collins*, 5 F.3d 1494 (5th Cir. 1993) (opining, where the plaintiff alleged that he "was not allowed to bring his shower shoes" to the shower, that the plaintiff's claim was speculative and did not state a claim under Section 1983). The Court should dismiss this ostensible conditions-of-confinement claim.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that the following claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted: Plaintiff Kenneth Jeffery Smith's claims that he did not receive medical care for the injuries he suffered because Officer Smith sprayed him with mace, Plaintiff's conditions-of-confinement claim, and Plaintiff's claims against Caldwell Parish Detention Center, Warden Kevin Wise, and Deputy Warden Callendar.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

**(14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 9th day of June, 2023.

*[signature]*
Kayla Dye McClusky
United States Magistrate Judge