UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **KENNETH JEFFERY SMITH** | **CIV. ACTION NO. 3:23-00198 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CALDWELL PARISH DETENTION CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are two motions: 1) a motion for summary judgment filed by Defendants, Lt. Davis, Sgt. Hollowell, Sgt. Smith, and Sgt. Wyles [doc. # 71]; and 2) a document titled, "Facts of the Material Subpoena," docketed as a motion to subpoena video [doc. # 82]. For reasons detailed below, IT IS RECOMMENDED that Defendants' motion for summary judgment be GRANTED and that Plaintiff Kenneth Smith's claims against said Defendants and the Unknown Officers be DISMISSED WITHOUT PREJUDICE. IT IS FURTHER ORDERED that the motion to subpoena video is DENIED.

## Procedural History

On February 14, 2023, Kenneth Jeffery Smith ("Smith"), an inmate, who, during the relevant period, was housed at the Caldwell Correctional Center ("CCC"),[1] filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 asserting claims for excessive force and failure to provide medical treatment against Defendants the CCC, Lt. Davis, Sgt. Hollowell, Sgt. Smith,

---

[1] Smith incorrectly referred to the CCC in his pleadings as the Caldwell Parish Detention Center. To avoid confusion, the undersigned will consistently refer to the entity as CCC. At the time he commenced this action, Smith had been transferred to the Bossier Medium Security Facility.

Sgt. Wyles, Warden Kevin Wise, Deputy Warden Callendar, and other unidentified officers. Over the course of this litigation, Smith amended his complaint on several occasions, the most recent filed on April 19, 2024. (Amend. Compl. [doc. # 54]).

Smith alleged that, on April 10, 2022, he was subjected to various acts of unwarranted violence and ensuing medical neglect by officers at the CCC. He seeks to recover $150,000 in punitive and compensatory damages, the dismissal of all charges against him, and his immediate release from custody. He also wants all of the defendant-officers fired.

On June 9, 2023, the undersigned conducted an initial review of Smith's pleadings and recommended dismissal of various parties and claims, save for the following:

> (1) that Officer Smith utilized excessive force, spraying Plaintiff with mace twice; (2) that Defendants Hollowell, Smith, and/or Wyles used excessive force, slamming Plaintiff to the ground; (3) that Sergeant Hollowell used excessive force, shoving Plaintiff's head into concrete; (4) that Hollowell, Smith, and Wyles beat Plaintiff while his hands were behind his back; and (5) that Lieutenant Davis, Officer Smith, Officer Wyles, Sergeant Hollowell, and unidentified officers failed to provide medical treatment for injuries Plaintiff suffered after being slammed on the ground and beaten.

(Report and Recommendation ("R&R") [doc. # 12]). On June 28, 2023, the District Court entered judgment, adopting the R&R, and dismissing the parties and claims as recommended. (Judgment [doc. # 15]).

Over the next several months, the Court took necessary steps to perfect service on the remaining named Defendants, Lt. Davis, Sgt. Hollowell, Sgt. Smith, and Sgt. Wyles (collectively, "Defendants" or "named Defendants"). *See* doc. #s 16-28. Once issue was joined, the Court entered a scheduling order on October 31, 2023, that set forth various deadlines for the amendment of pleadings, completion of discovery, and the filing of dispositive motions. (Sched. Order [doc. # 29]).

2

On February 9, 2024, the Clerk of Court dismissed the case because Smith failed to apprise the Court of a change to his mailing address. (Order of Dismissal [doc. # 37]). On March 6, 2024, however, the Court reopened the case pursuant to a February 27, 2024 letter from Smith, which the Court construed as a motion to reinstate the action. *See* doc. #s 39-40. On March 8, 2024, the Court issued another scheduling order that included new deadlines for discovery completion and the filing of dispositive motions. (Sched. Order [doc. # 41]).

On July 30, 2024, pursuant to a motion filed by Smith, the Court extended the discovery completion and dispositive motion deadlines to August 30 and September 30, 2024, respectively. (E-Order [doc. # 67]). In previous scheduling orders entered in this case, the Court cautioned that, "[t]o allow time for responses, written discovery must be served more than thirty (30) days" before the discovery completion deadline. *See, e.g.*, doc. # 41

On September 30, 2024, Defendants filed the instant motion for summary judgment seeking dismissal of Smith's complaint for failure to exhaust available administrative remedies prior to filing suit. Specifically, Defendants argued that Smith not only filed an untimely initial grievance, but also failed to complete the third step of the administrative process. Smith did not file an opposition to the motion for summary judgment. *See* Notice of Motion Setting [doc. # 72].

On November 21, 2024, the undersigned recommended that Defendants' unopposed motion for summary judgment be granted and that Smith's claims be dismissed for failure to complete all three steps of the available grievance procedure. (R&R [doc. # 73]).[2]

---

[2] Via the same instrument, the undersigned denied Smith's pending motion for court assistance [doc. # 74]. *Id*.

3

On December 9, 2024, Smith filed a motion for leave of court to file an otherwise out-of-time opposition to Defendants' motion for summary judgment. [doc. # 75]. Smith attached a proposed opposition brief that both explained his initial failure to initiate the grievance process after the subject incident, and included evidence that he, in fact, had exhausted the final step of the grievance process. *Id*.

On December 10, 2024, the undersigned granted Smith's motion and ordered his opposition brief filed into the record. (Order [doc. # 76]; Pl. Opp. Brief [doc. # 77). In order to give effect and proper consideration to Smith's opposition brief and supporting evidence, the undersigned vacated, in part, the November 21, 2024 R&R, solely with respect to the recommended disposition of Defendants' motion for summary judgment. (Order [doc. # 76]). The undersigned further granted Defendants leave to file a reply brief in support of their motion for summary judgment by January 6, 2025. *Id*.

On January 6, 2025, Defendants filed a reply brief in support of their motion for summary judgment wherein they conceded that, by submitting a copy of a July 28, 2022 letter from the Caldwell Parish Chief Deputy, Smith had created a genuine dispute of material fact as to whether he had completed the third step of the grievance process. (Defs. Reply [doc. # 79]). However, Defendants re-urged their contention that Smith had not timely initiated the grievance process. To support their argument, they applied for and obtained leave of Court to supplement their summary judgment motion with additional evidence.[3] *See* doc. #s 78, 80-81. [doc. # 78].

On March 3, 2025, Smith filed a document titled, "Facts of the Material Subpoena," in

---

[3] Defense counsel represented that he spoke with Smith by telephone, who indicated that he did not consent to the motion. *Id*.

which he requested,

1) a copy of the Richland Parish mail log showing that mail was sent to the CPDC, the Caldwell Parish Sheriff, the Department of Corrections, etc.;

2) medical records from E.A. Conway showing the extent of his injuries; and

3) video footage from April 10, 2022, showing that he was a victim of excessive force.

[doc. # 82].

However, Smith never filed a response to Defendants' supplemental evidence.

The matter is ripe.

## **Motion for Summary Judgment**

**I.    Summary Judgment Principles**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(b).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving

party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support his claim, summary judgment is appropriate. *Id.* "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, he must establish "beyond peradventure[4] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*,

---

[4] I.e., beyond doubt.

14 F.3d 52 (5th Cir. 1993).

**II.    Administrative Exhaustion**

    a)    <u>Law</u>

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and is required even where the relief sought cannot be granted by the administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citations omitted).  All "available" remedies must be exhausted, whether speedy and effective, or not.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules."  *Johnson v. Kukua*, 342 Fed. App'x. 933, 934 (5th Cir. 2009) (citing *Woodford,* 548 U.S. at 89-93).  An "untimely or otherwise procedurally defective administrative grievance or appeal," does not satisfy the exhaustion requirement.  *Id*.

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies.  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56.  *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter,* 534 U.S. at 532 (citation omitted).  An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or

7

monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See, e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. App'x. 564 (5th Cir. 2003).

If required by the terms of the prison's grievance procedures, a prisoner must exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *See Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir. 2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when those grievances were not responded to in a timely fashion); *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (because grievance policy did not require plaintiff to object when he failed to receive a response to his initial grievance, he was not required to proceed to the additional steps of the process). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all "available" steps. *Ates v. St. Tammany Parish*, Civ. Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014) (and cases cited therein); *see also Hicks v. Lingle*, 370 F. App'x. 497, 499 (5th Cir. 2010) (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response); *Wilson*, 776 F.3d at 300 (finding that plaintiff failed to exhaust subsequent steps of grievance process even though procedure was phrased permissively as, "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

8

In 2016, the Supreme Court explained that, "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (citations omitted).[5]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused or deemed "unavailable." *Id.* First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates. *Ross*, 578 U.S. at 643 (citation omitted).[6] Second, exhaustion is not required where an administrative scheme is so opaque that it is unknowable in the sense that no ordinary prisoner can discern its requirements. *Ross*, 578 U.S. at 644. Finally, the administrative process

---

[5] Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 Fed. App'x. 187, 190 (5th Cir. 2015).

[6] The Supreme Court provided some examples,

> [s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office, but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth*'s words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

*Ross,* 578 U.S. at 643 (internal citations omitted).

9

is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. App'x. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. App'x. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. App'x. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon,* 596 F.3d at 268 (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*. Nonetheless, "[i]f impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir. 2008)).

      b)    <u>The CCC had an Available Administrative Remedy Procedure</u>

Defendants adduced competent summary judgment evidence to show that the CCC had a three-step Administrative Remedy Procedure ("ARP") that was in effect during the relevant period. (Declaration of CCC Warden Kevin Wyles and CCC Electronic Inmate Handbook; Defs. MSJ, Exhs. A & A-1). The ARP applies to any complaint regarding inmate life, including, *inter alia*, a complaint against a CCC employee, a rule, a policy, or condition of the compound. (CCC Elec. Inmate Handbook; Defs. Exh. A-1).

To initiate the ARP at the CCC, an inmate must file a grievance within 30 days of the date of the incident that forms the basis for the complaint. *Id*. The grievance may be filed on the

form provided by the CCC or on any blank sheet of paper that is labeled, "Inmate Grievance." *Id*. The grievance must be turned into the deputy warden's office, who will respond to the grievance within ten days of receipt. *Id*.

If an inmate is not satisfied with the deputy warden's response to the first step grievance, then, within five days, the inmate shall request a review by the warden, who will provide a response within ten days. *Id*.

Finally, if the inmate is dissatisfied with the response from the warden, then, within five days, he is required to request review from the "Chief Deputy." *Id*.

The ARP also includes deadlines for inmates to request further review if the inmate does not receive a timely response from the deputy warden or warden. *Id*. Specifically, if the inmate does not receive a response from the warden within ten days, then he shall request review from the "Chief Deputy" within five days. *Id*.

In his brief, Smith argues that, pursuant to Louisiana Revised Statute § 15:1172 and/or the administrative remedy procedure set forth by the Louisiana Department of Public Safety and Corrections ("LDPSC") in 22 La. Admin. Code Pt. I, 325, he had 90 days (rather than 30) after the April 10, 2022 incident within which to initiate the grievance process. (Pl. Opp. Memo., pgs. 3-4).

However, the Fifth Circuit has held that a prisoner must comply with the ARP "provided to him by the jail in which he was being held," not the ARP of other institutions. *Philips v. Green*, 814 F. App'x 852, 855 (5th Cir. 2020) (finding prisoner filing grievance was bound by requirements of the ARP used by the institution at which he was held, not the Louisiana Department of Corrections ARP); *see also Bentley v. Kupp*, Civ. Action No. 23-00771, 2024 WL

11

802213, at *3 (W.D. La. Feb. 6, 2024), *R&R adopted,* 2024 WL 794523 (W.D. La. Feb. 26, 2024). Here, Smith was held at the CCC at the time of the alleged incident, and, consequently, was bound to follow the ARP available at the CCC, not that of the LDPSC. *Bentley*, 2024 WL 802213, at *3.

Smith also cannot argue, in good faith, that he was unaware of the ARP at the CCC. First, Defendants adduced a copy of Smith's electronic kiosk history at the CCC, which purportedly shows Smith's acknowledging receipt of the CCC inmate handbook upon his arrival at the facility on February 5, 2022. (Warden Wyles Decl., MSJ Exh. A; Resident Historical Read/Watch for Smith, MSJ Exh. A2. ). Second, Smith adduced evidence showing that he proceeded through the three steps of the CCC ARP, which he would not have done unless he was acquainted with the CCC ARP. *See* Pl. Opp. Brief, pgs. 5-8.

    c) <u>Smith Failed to Timely Exhaust Available Administrative Remedies Prior to Filing Suit</u>

In support of their motion for summary judgment, Defendants adduced evidence to show that, in a grievance dated July 5, 2022, Smith complained about the April 10, 2022 excessive force and denial of medical care incidents that form the basis for this suit. *See* Warden Wyles Decl., MSJ Exh. A; Req. for ARP; MSJ Exh. A3. In his opposition brief, Smith agreed that he submitted a grievance to the CCC on July 5, 2022. (Pl. Opp. Brief, pg. 4).

In an undated response, Deputy Warden Callender rejected Smith's grievance because it was dated July 5, 2022, and not received by the facility until July 18, 2022, i.e., considerably past the deadline set forth in the CCC's ARP requiring grievances to be filed within 30 days after the complained of incident(s). (Req. for ARP, MSJ Exh. A3).

Smith filed his second-step appeal with Warden Wyles on July 20, 2022. (Warden Wyles

12

Decl., MSJ Exh. A).  In an undated response, Warden Wyles stated that he concurred with Deputy Warden Callender's rejection of Smith's grievance because Smith had not followed the grievance procedure.  (Warden's Response, MSJ Exh. A4).  Warden Wyles added that, if Smith was not satisfied with his decision, then he "shall appeal to the Chief Deputy within 5 days." *Id*.

Warden Wyles averred that there were no records indicating that Smith ever filed a third-step request for review to the Chief Deputy.  (Warden Wyles Decl.; MSJ Exh. A).  However, Smith produced a copy of a July 28, 2022 letter addressed to him from Chief Deputy Jack McKeithen, denying his grievance because he had waited more than 30 days after the incident to file the grievance.  (July 28, 2022 letter from J. McKeithen to K. Smith; Pl. Opp. Brief, pg. 8).

In his response to the summary judgment motion, Smith asserts that, on April 12, 2022, he was transferred to the Franklin Parish Detention Center ("FPDC") and placed in a one-man cell with no writing materials until July 3, 2022, when he was transferred to Richland Parish Detention Cetner.  (Pl. Opp. Brief, pg. 5).  Thus, he concludes that it had been impossible for him to meet the CCC ARP's 30-day deadline for filing a grievance.  *Id*.  In other words, he argues that the administrative remedy was unavailable to him during his time at the FPDC.  *See, e.g.*, *Aceves v. Swanson*, 75 Fed. App'x. 295, 296 (5th Cir. 2003) (stating that remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies).

However, in response to Smith's representations, Defendants submitted a declaration from David Rigdon, the Chief Deputy of the Franklin Parish Sheriff's Office, who confirmed that Smith arrived at the FPDC on April 12, 2022, but only remained there for 52 days, until he was transferred out on June 3, 2022.  (Decl. of David Rigdon and Time Served, Exh. B1 [doc. #

13

81 & 81-1]). Rigdon further attested that, while housed at the FPDC, Smith not only had access to writing materials, envelopes, and stamps, he even purchased them. *Id*. Specifically, Rigdon attached Smith's commissary receipts showing that Smith bought three stamps and one envelope on April 18, 2022, five stamps and one legal pad on April 28, 2022, plus four stamps and one package of pens on May 2, 2022. *Id*. and Exh. B2 [doc. #s 81 & 81-2].

In short, Smith's bare representation that he was unable to submit a grievance while housed at the FPDC because he lacked writing materials is disproved by Defendants' detailed and specific evidence to the contrary, for which Smith provided no response. Likewise, Defendants also adduced evidence showing that Smith was transferred out of FPDC one month earlier than Smith claimed. Therefore, any supposed impediment to Smith's filing a grievance on account of his incarceration at the FPDC was removed by his transfer out of that facility, which occurred more than 30 days before Smith submitted the grievance. Again, Smith did not address this new and material evidence.

The Court recognizes that, in the wake of the amendment to Rule 56, it now has the latitude to credit unsworn statements at the summary judgment stage.[7] Here, however, Smith did

---

[7] *See Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (quotations omitted) ("New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial. Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . ,the material may be presented in a form that would not, in itself, be admissible at trial."); *Lozano v. Davis*, 774 F. App'x 263, 264 (5th Cir. 2019) (reasoning that considering whether a plaintiff's unsworn assertions "could have been presented in an admissible form . . . is particularly relevant where a pro se plaintiff's allegations form his entire response in opposition to summary judgment."); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("The district court dismissed Captain Jamison's report solely because it was not sworn without considering Lee's argument that Captain Jamison would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible."); *Maurer v. Indep. Town*,

14

not respond to Defendants' supplemental evidence at all, and, regardless, his prior statements remain conclusory, without any context.[8] Accordingly, they are insufficient to defeat summary judgment. *See Nelson v. Sollie*, No. 22-60461, 2023 WL 3863345, at *1–2 (5th Cir. June 7, 2023) (unpubl.) (citation omitted) (plaintiff's claim that he "exhausted his remedies by filing a grievance to which he never received a response" is "wholly conclusional and is insufficient to survive summary judgment); *Ryan v. Phillips*, 558 Fed. App'x. 477, 478 (5th Cir. 2014) (citation omitted) (plaintiff's "conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure is insufficient to refute the lack of evidence that he filed any informal or formal grievances"); *Phillips*, 814 Fed. App'x. at 856 (unsubstantiated assertions do not show the requisite genuine dispute of material fact).

Upon consideration of the existing record, the undersigned finds that no reasonable trier of fact[9] could find that Smith timely filed his initial grievance within 30 days after the subject

---

870 F.3d 380, 384 (5th Cir. 2017) ("This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record.").

[8] In fact, in his complaint, Smith inconsistently stated, under penalty of perjury, that he filed a grievance *while at the CCC*. (Compl., pg. 3 [doc. # 1]).

[9] In this case, no party has made a jury demand. "When deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir.2019) (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)). In this non-jury, pro se prisoner suit, the undersigned magistrate judge ordinarily is the trier of fact at a hearing held pursuant to *Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), *modified on other grounds*, 964 F.2d 400 (5th Cir.1992), which "amounts to a bench trial replete with credibility determinations and findings of fact." *McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir. 1995). Further, on review, the district judge will have the opportunity to consider the same evidence.

incident, as required by the CCC's ARP. *See Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party). Moreover, Smith provided no cognizable evidence to excuse his non-compliance with the CCC's grievance procedure, or to show that the procedure was "unavailable." Therefore, he did not properly exhaust his claims before filing the instant suit against the named Defendants and the Unknown Officers[10] for the claims asserted herein. *Phillips*, 814 Fed. App'x. at 855. Dismissal is required. *Id*.

## Facts of the Material Subpoena

In light of the undersigned's recommended disposition of Defendants' motion for summary judgment for failure to exhaust administrative remedies, Smith's pending request to subpoena additional evidence is fatally compromised.

First, Smith's request to subpoena the Richland Parish mail log to prove that he sent mail to the CCC is not relevant. It is not contested that Smith completed all of the steps of the CCC's ARP. Second, the request to subpoena medical records and video footage is not relevant to the exhaustion issue raised by Defendants' motion for summary judgment.

## Conclusion

For the above-stated reasons,

---

[10] Smith's claims against the Unknown Officers arise out of the same incidents that form the basis for his claims against the named Defendants. Therefore, Smith's claims against the Unknown Officers likewise are subject to dismissal for failure to exhaust administrative remedies. *See Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (where defending party establishes that plaintiff has no cause of action, the defense generally inures to the benefit of a non-appearing co-defendant). Furthermore, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

IT IS RECOMMENDED that the motion for summary judgment [doc. # 71] filed by remaining Defendants, Lt. Davis, Sgt. Hollowell, Sgt. Smith, and Sgt. Wyles John Brown, be GRANTED, and that Plaintiff Kenneth Smith's claims against said Defendants, plus the Unknown Officers, be DISMISSED WITHOUT PREJUDICE.[11]

IT IS FURTHER ORDERED that Plaintiff Kenneth Smith's "Facts of the Material Subpoena," docketed as a motion to subpoena video [doc. # 82], is hereby DENIED.[12]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

---

[11] Defendants seek dismissal without prejudice.  *See* Defs. Reply Brief, pg. 4.

[12] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any objection/appeal must be made to the district judge in accordance with Rule 72(a) of the Federal Rules of Civil Procedure.

In Chambers, at Monroe, Louisiana, on this 24th day of April, 2025.

                                         KAYLA DYE MCCLUSKY
                                         UNITED STATES MAGISTRATE JUDGE